(15 App. Div. 602.)

## CUMMINGS v. UNION BLUESTONE CO. et al.

(Supreme Court, Appellate Division, Second Department. April 13, 1897.)

1. CONTRACTS—RESTRAINT OF TRADE.
    A contract to control the price of a commodity is void, as in restraint of trade, where the annual sales of such commodity in the state are about $1,500,000, though it is not an article of necessity.

2. SAME—INTERPRETATION OF CONTRACT.
    The question whether a contract is unlawful will not be submitted to the jury, where there is no dispute in regard to its terms, or what had been done under it.

Appeal from trial term, New York county.

Transferred from First department.

Action by James V. Cummings against the Union Bluestone Company and Elizabeth Sweeney and James J. Sweeney, surviving members of the firm of E. Sweeney & Sons, to recover $40,000 damages alleged to have been sustained by plaintiff as the result of a conspiracy between defendants to abrogate a contract creating a combination to fix and control the price of bluestone. From a judgment entered on a verdict directed by the court in favor of defendants, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Leopold Leo, for appellant.

A. T. Clearwater, for respondent the Union Bluestone Co.

J. F. Cloonan, for respondents Elizabeth Sweeney and others.

WILLARD BARTLETT, J.   On February 21, 1887, the Union
Bluestone Company, as the party of the first part, entered into a
written agreement with the plaintiff, the firm of the defendants
Sweeney, and 13 other parties of the second part, for the purpose of
controlling the bluestone trade in the city of New York, and in-
creasing the price of bluestone over the rates then prevailing in the
market.   By the first article of the contract the Union Bluestone
Company, as sales agent, undertook to make sales, as far as practi-
cable, for the parties of the second part, of all the manufactured and
unmanufactured marketable bluestone which the market would
take, for six years from the date of the agreement, at such rate of tariff
of prices as should be fixed by a body known as the Bluestone Asso-
ciation.   This body was composed of the parties of the second part
themselves, who were the principal wholesale dealers in bluestone
along the Hudson river.   The Union Bluestone Company agreed to
apportion such sales between the members of the association in cer-
tain specified proportions, based on aggregate sales amounting to
the sum of $1,905,000; and the proportion or quota representing
the plaintiff's interest, or the quantity of bluestone to be sold in
his behalf, was stated at $90,000.   This amount was to be increased
or diminished according to the total amount of sales.   The blue-
stone dealers covenanted, in the second article of the contract, to
furnish the required stone in the proportions indicated; and by the
third article they agreed not to sell or deliver, either directly or
indirectly, any stone to any person or corporation, except such as
should be sold through the Union Bluestone Company.   There
were many other provisions, and among them a declaration to
the effect that any violation of the contract should subject the of-
fending party to an action at law for damages, or a suit in equity to
enforce the agreement.   On August 30, 1888, the plaintiff assigned
to the firm of E. Sweeney & Sons all the rights, interests, and priv-
ileges acquired by him under the aforesaid combination agreement,
and the firm agreed to pay to the plaintiff 10 per cent. upon the
gross amount of sales apportioned to him thereunder.   After the
establishment of the combination, the price of bluestone to retail-
ers in the New York market increased 20, 25, and 30 per cent.   The
Bluestone Association enjoyed some years of prosperity, but in
February, 1890, it had become so threatened by outside competition
that the combination was abandoned by a majority of the contract-
ing parties, who declared the agreement canceled, though against
the objection and vote of the plaintiff.   The present suit is brought
to recover $40,000 damages against the Union Bluestone Company
and the survivors of the firm of E. Sweeney & Sons, upon the charge
that since about January 1, 1890, the corporation wrongfully, and
with the knowledge, consent, and connivance of the defendant Swee-
ney, has refused and declined to request the plaintiff to furnish
his quota of stone under the combination agreement, and that this
refusal on the part of the company has been induced by the firm.

Upon the trial, after the evidence on both sides was all in, the
learned justice who presided directed the jury to find a verdict for

the defendants, upon two grounds: First, that the combination agreement was illegal and void, as being in restraint of trade, and consequently no action could be maintained upon it; and, second, that there was no proof of any refusal on the part of the Union Bluestone Company to perform its obligations to the plaintiff under the contract, and no evidence that the defendant Sweeney had committed any act to the detriment of the plaintiff, or omitted to perform any obligation which he owed him. It seems to me quite clear that this agreement between the wholesale dealers in bluestone, who then controlled 90 to 95 per cent. of the manufactured stock sold in the state, was a contract inimical to trade and commerce, under the authority of People v. Sheldon, 139 N. Y. 251, 34 N. E. 785, and the cases therein cited. It is true that the combination which was the subject of consideration in that case had for its object the prevention of competition between dealers in coal, which may be regarded as an article of necessity, in the ordinary sense, while there is no such general need or demand for bluestone as to bring it within that category. Nevertheless, a production the sales of which in this state in a single year amount to $1,500,000 is sufficiently useful and important to the community to bring it within the operation of that rule of law which invalidates agreements to prevent competition in trade. See, also, People v. Milk Exchange, 145 N. Y. 267, 39 N. E. 1062. It was insisted by the counsel for the plaintiff that he was entitled to go to the jury upon the question of the validity of the contract, inasmuch as an agreement to increase the price might be either lawful or unlawful, according to the circumstances; but his request in this regard was properly denied, inasmuch as there was no dispute in regard to the terms of the contract, or what had been done under it.

. But, even if the combination agreement were to be regarded as valid, the learned trial judge was entirely right in directing a verdict for the defendants, because the plaintiff utterly failed to prove the allegations of the complaint in respect to their conduct. It was shown in the most positive manner, and without contradiction, that the president of the Union Bluestone Company notified the plaintiff that his corporation would be ready to sell any stone that he would send forward under the agreement, notwithstanding the action of the association in reference to its cancellation, and that at no time was any arrangement made or understanding had with the firm of E. Sweeney & Sons, or any of its members, that the combination agreement should be abrogated, or that any bluestone furnished by the plaintiff should not be taken and sold. After the meeting at which a majority of the Bluestone Association voted to cancel the agreement, the plaintiff never requested the Union Bluestone Company to sell any stone for him, or offered it any stone, or informed it that he had any stone for sale. Upon this state of the evidence, in view of the form of the complaint, there was no question of fact to be submitted to the jury.

The judgment should be affirmed, with costs. All concur.